Robert MORRIS, Appellant,

v.

UNITED STATES, Appellee.

Barbara (Cynthia) CARROLL, a/k/a
Iva Price, Appellant,

v.

UNITED STATES, Appellee.

Nos. 4940, 4941.

District of Columbia Court of Appeals.

Argued July 29, 1969.

Decided Dec. 2, 1969.

**338**

Kenneth D. Wood, Washington, D. C., for appellants.

Eric Rubin, Atty. Dept. of Justice, of the bar of the State of New Jersey, pro hac vice, by special leave of court. Thomas A. Flannery, U. S. Atty., Roger E. Zucker-man, Asst. U. S. Atty., Robert G. Mahony and Charles F. Scarlata, Attys., Dept. of Justice, were on the brief, for appellee. John A. Terry, Asst. U. S. Atty., also entered an appearance for appellee.

Before HOOD, Chief Judge, and FICKLING and KERN, Associate Judges.

FICKLING, Associate Judge:

The appellants were convicted by a court, sitting without a jury, of knowingly presenting, directing, and participating in the presentation of an obscene, indecent, and filthy performance.[1] Two officers of the Morals Division of the Metropolitan Police Department, in the company of two other officers, observed the performance of appellant Carroll at the Gayety Theatre. Nineteen photographs of her performance, which corroborated the details of the officers' testimony, as well as some parts of her costume, were admitted into evidence. The undisputed facts were that appellant Carroll appeared on stage in a white gown and cape which exposed her buttocks. Accompanied by music she danced to the center of the stage, rubbed her hand over the cape covering her breasts, turned around and rubbed her buttocks. She then moved to the side of the stage, removed the cape and performed a "bump and grind type dance." She removed her gown, which left her wearing a white bra and pants, garter belt, stockings and shoes. She also had a tail hanging from her costume. She danced from the right to the left side of the stage and onto the runway. She stroked the tail and ran the end of it in and out of her mouth. She moved to a platform at center stage where she removed the rest of

---

1. D.C.Code 1967 (Supp. II, 1969), § 22–2001,, provides in pertinent part:
   (a) (1) It shall be unlawful in the District of Columbia for a person knowingly—
     \*   \*   \*   \*   \*   \*
   (B) to present, direct, act in, or otherwise participate in the preparation or presentation of, any obscene, indecent, or filthy play, dance, motion picture, or other performance ;

  \*   \*   \*   \*   \*   \*
   (2) (B) For purposes of paragraph (1) of this subsection, the term "knowingly" means having general knowledge of, or reason to know, or a belief or ground for belief which warrants further inspection or inquiry of, the character and content of any  \*  \*  \*  performance  \*  \*  \*  which is reasonably susceptible of examination.

her clothes, retaining only a patch which covered her pubic area. She lay down on her back on the platform. While in this position, she moved her hips in an up and down motion and rubbed the end of the tail around her pubic area, between her breasts, and put it into her mouth. She then moved her legs toward the right side of the stage, held one up in the air, pulled the patch aside exposing her vaginal area and, at the same time, yelled, "Let's see it all." Moving her legs to the left side of the stage, she exposed herself again with her legs spread apart in the air. She then got on her hands and knees with her buttocks and vaginal area exposed to the audience and moved her hips in an up and down motion. Finally she stood up, put on a negligee, which also exposed her vaginal area, and danced off stage.

It was stipulated at trial that appellant Morris was the manager on the premises at the time of the performance.

The defendants moved for judgment of acquittal at the close of the Government's case. The motion was denied. The defendants offered no evidence, and the trial court found that the performance "constituted [a] hardcore pornographic demonstration" and that appellant Carroll was guilty as charged. The court also found appellant Morris guilty of knowingly and unlawfully presenting the obscene performance in violation of the statute.

Appellants contend on appeal that the trial court erred in not granting their motion for a judgment of acquittal at the close of the Government's case. Appellants argue, firstly, that § 22–2001 requires a showing on the part of the prosecution that the defendants had at least a general knowledge that the performance was of an obscene character, and that no attempt at such a showing was made. Secondly, they argue that the performance was incorrectly found to be hard-core pornography and that the constitutional test of obscenity set forth in Roth v. United States, 354 U.S. 476, 77

S.Ct. 1304, 1 L.Ed.2d 1498 (1957), was not applied. Thirdly, appellants argue that no evidence of national community standards of obscenity was offered by the Government as required by Hudson v. United States, D.C.App., 234 A.2d 903 (1967).

The Government argues, in response, that the required scienter element is met by a mere awareness of the operative facts and that appellants need not have known that the performance of Miss Carroll was legally obscene. The Government argues also that this court, in Hudson v. United States, *supra,* carved out an exception to the rule that the Government has the burden to introduce affirmative evidence of national community standards where hard-core obscenity is involved. Relying on *Hudson, supra,* and Womack v. United States, 111 U.S.App.D.C. 8, 294 F.2d 204 (1961), the Government states the exception is that, where evidence of hard-core pornography is presented, community standards need not be proved but, rather, these standards may be determined by the judge's own experience and common sense.

■ Whether the phrase "character and content" in § 22–2001 means the obscene character of the performance, as the appellants so strenuously argue, or whether it encompasses merely the factual content of the performance, as the Government contends, is not really determinative here. Analysis of the language of subsection (a) (2) (B) shows rather clearly that the statute requires no more than that the appellants had sufficient knowledge of the performance such that they should have suspected its impropriety and inspected or inquired further as to its character and content. In other words, the statute allows the appellants to remain ignorant of the illegality of the performance only at their peril, once they knew or had reason to know that they might be violating the statute. These provisions of the statute were rewritten in this form in 1967 to conform to the current trend of decisions in-

volving obscenity and pornography.[2] Congress did not intend that the question of the obscenity of the performance should depend upon the opinion or belief of the person who, with knowledge or notice of his acts, assumed the responsibility of putting on the performance.[3]

▮ In the case at bar, the performer, appellant Carroll, obviously had enough knowledge about the performance to properly hold her responsible for further inquiry or inspection into its character and content. She knew or should have known that the performance in question might violate the statute since she was the performer, and that is all that is needed to satisfy the requirement of scienter under the statute. After examining this record,[4] we hold that reasonable men could conclude only that acts simulating fellatio and the intentional exposure of the vaginal area, in the manner and circumstances as in the case at bar, are obscene per se.

▮ The trial court properly could and did find that appellant Morris also had the requisite scienter under the statute.

Where, as here, "[u]pon a motion for judgment of acquittal, the trial judge must assume the truth of the Government's evidence and give the Government the benefit of all legitimate inferences to be drawn therefrom," [5] it cannot be successfully argued that the judge was in error in finding that Mr. Morris had sufficient knowledge to be convicted. The trial judge could infer that Mr. Morris, as the manager *actually present,* knew or had reasonable opportunity to know of the character and content of Miss Carroll's act. Section 22-2001 placed the burden of ascertaining whether or not Miss Carroll's performance might have been obscene on him as well as on her, and neglect to do so is not an adequate defense.

▮ This court holds also that obscenity per se is a separate and distinct category of obscenity.[6] We further hold that where the trial judge makes the finding as a matter of law that the material or performance in question is obscene per se, the Government need not proffer any evidence of national community standards.[7]

2. Senate Comm. on the District of Columbia, S.Rep. No. 912, 90th Cong., 2d Sess. 23 (1967) ; House Comm. on the District of Columbia, H.R.Rep. No. 387, 90th Cong., 2d Sess. 29 (1967).

3. In Mishkin v. N. Y., 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966), the Court found that the New York Court of Appeals' interpretive restriction of the application of their obscenity statute to "those who are in some manner aware of the character of the material" fully met the demands of the Constitution. 383 U.S. at 510–511, 86 S.Ct. at 964.

4. Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964), gives us the privilege to review the evidence de novo.

5. Thomas v. United States, 93 U.S.App. D.C. 392, at 393, 211 F.2d 45, at 46, cert. denied, 347 U.S. 969, 74 S.Ct. 780, 98 L.Ed. 1110 (1954) ; Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

6. It appears that courts have used the phrases "hard-core pornography" and "obscenity per se" interchangeably and without distinction, and we do so here.

7. This court, of course, adheres to the Supreme Court test for obscenity stated in A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Att'y General, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), where obscenity or pornography is an issue for the fact finder. In such a case, to support a finding of obscenity "three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." 383 U.S. at 418, 86 S.Ct. at 977. In such a case, the Government must show by evidence that the material or performance in question is below the national community standard. This would obviously necessitate a show-

This exception to the test was suggested in both *Hudson* and *Womack,* and we adopt it as the law in this jurisdiction. Maryland has preceded us in adopting this exception. *See* Levin v. State, 1 Md.App. 139, 228 A.2d 487 (1967), cert. denied, 389 U.S. 1048, 88 S.Ct. 767, 19 L.Ed.2d 840 (1968); Donnenberg v. State, 1 Md.App. 591, 232 A.2d 264 (1967). However, where there is a ruling of obscenity per se, the defense would then be entitled to offer evidence of the national community standard to prove that the material or performance is *not* obscene. Such proof, if established, would be a good defense.[8]

Although the definition and elements of obscenity have been authoritatively stated in *Roth* and *Memoirs,* definition of the oft-used terms "hard-core obscenity" and "obscenity per se" has been neglected by the Supreme Court.[9] The Court of Special Appeals of Maryland has faced this problem before and has defined these terms in the following language: hard-core pornography or obscenity per se is obscenity

which "focuses predominately upon what is sexually morbid, grossly perverse and bizarre without any artistic or scientific purpose or justification." There is no desire to portray [it] in pseudo-scientific or "arty" terms. It can be recognized by the insult it offers, invariably, to sex and to the human spirit. It goes substantially

beyond customary limits of candor and deviates from society's standards of decency in the representation of the matters in which it deals. It has a patent absence of any redeeming social value; it speaks for itself and screams for all to hear that it is obscene. It is not designed to be a truthful description of the basic realities of life as the individual experiences them but its main purpose [is] to stimulate erotic response. * * * No proof, other than the viewing of it, is required to determine if it is, in fact, obscene.[10]

It is clear to this court that where obscenity per se is involved, the prosecution is not required to offer any evidence (beyond the material or performance itself) that it is pornographic or obscene or that it is below the national community standards. *Womack, supra; Hudson, supra.* In other words, if reasonable men could not differ and they could come to but one conclusion, *i. e.,* that the material or performance is sexually morbid, grossly perverse, and bizarre, without any artistic or scientific purpose or justification, then the Government on its case-in-chief need not offer any evidence of national community standards.

For the foregoing reasons, we

Affirm.

ing of what the national community standard is. Hudson v. United States, *supra.*

8. Levin v. State, *supra.* It is noted, as an analogy, that in criminal and civil actions where words have been found to be libelous per se, truth is a defense. D.C.Code, § 22–2303. Curtis Publishing Co. v. Vaughan, 107 U.S.App.D.C. 343, 278 F.2d 23, cert. denied, 364 U.S. 822, 81 S.Ct. 57, 5 L.Ed.2d 51 (1960).

9. *Cf.* Ginzburg v. United States, 383 U.S. 463, at 497, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966) (Stewart, J., dissenting).

10. Donnenberg v. State, 1 Md.App. at 600, 232 A.2d at 269. *See also* Levin v. State, 1 Md.App. at 144–145, 228 A.2d at 489–490; People v. Richmond County News, 9 N.Y.2d 578, at 587, 216 N.Y.S.2d 369, at 376, 175 N.E.2d 681, at 686 (1961). Note that we adopt this definition intending to make no distinction between pornography or obscenity which portrays sexual activity and that which does not. To be found to be hard-core pornography, material, performances, etc., need not involve the depiction of sexual activity. Levin v. State, *supra.*